**BECKSTROM & BECKSTROM, LLP**
James A. Beckstrom, Esq.
Nevada Bar No. 14032
400 South 4th Street, Suite 650
Las Vegas, Nevada 89101
Telephone: (725) 300-0599
jb@beckstromlaw.com
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| YAYAS KITCHEN, LLC, a Nevada limited liability company,<br><br>            Plaintiff,<br><br>    vs.<br><br>ERC SPECIALISTS, LLC., a Utah limited liability company; THE LAW OFFICE OF ROCKY D CROFTS, LLC; ROCKY D. CROFTS, an individual; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>            Defendants. | Case No.: |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff YAYAS KITCHEN, LLC, by and through its attorneys of record, James A. Beckstrom, Esq., with the law firm of Beckstrom & Beckstrom, LLP hereby alleges and complains as follows:

**PARTIES**

1. YAYAS KITCHEN, LLC ("Plaintiff"), is at all times relevant herein, a domestic limited liability company of Nevada.

2. ERC SPECIALISTS, LLC (Defendant), is a Utah limited liability company and at all times relevant herein was actively advertising, marketing, promoting, and retaining clients within Clark County, Nevada.

3. THE LAW OFFICE OF ROCKY D CROFTS, LLC (Defendant), is a Utah limited liability company engaged in the practice of law.

4.     ROCKY D. CROFTS (Defendant), upon information and belief is a resident of Utah.

5.     The names and capacities, whether individuals, corporate, associate or otherwise of Defendants named herein as DOE and ROE CORPORATION are unknown or not yet confirmed. Upon information and belief, said DOE and ROE CORPORATION Defendants are responsible for damages suffered by Plaintiff as a result of the claimed breaches of fiduciary duty, legal advice, self-dealing, and omissions as more fully defined in the preceding paragraphs, which are associated with the "Client Agreement" as more fully defined therein, which includes but is not limited to the deceptive representations, omissions, and actions involved with the Employee Retention Credit. Therefore, Plaintiff sues said Defendants by such fictitious names.  Plaintiff will seek leave to amend this Complaint to show the true names and capacities of each DOE and ROE CORPORATION Defendant at such time as the same has been ascertained.

## JURISDICTION AND VENUE

6.     Subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.00 and the parties are of different states, with Plaintiff a resident of Nevada, and Defendants residents of Utah.

7.     Venue is proper in the United States District Cout of Nevada pursuant to 28 U.S.C. § 1391(b)(2), because the obligations, acts, and omissions complained of herein were incurred and committed by way of Defendants affirmatively reaching into the jurisdiction of Clark County, Nevada to engage Plaintiff, a business which Defendants knew was operating under the laws of the State of Nevada.

8.     This Court possesses personal jurisdiction over Defendants, because Defendants' activities and contacts in Nevada, inclusive of Defendants' obligations, acts, and omissions complained of herein were aimed at Plaintiff in Nevada by way of Plaintiffs' contacts through the Client Agreement with Plaintiff and continued legal representation, rendition of advice and counsel, and affirmative actions with the IRS on behalf of a Nevada resident (Plaintiff), and thus, Defendants have had sufficient minimum contacts with this forum such that the exercise of

personal jurisdiction over them will not offend traditional notions of fair play and substantial justice.

9. Jurisdiction and venue are also proper based on Defendants' affirmative act of reaching into Nevada to induce Plaintiff to engage with Defendants through the Client Agreement and associated Power of Attorney for tax authority.

**GENERAL ALLEGATIONS**

10. Plaintiff, at all times relevant herein is in the business of manufacturing wholesale food products for food retailers through a single USDA production facility located in Henderson, Nevada.

11. During the COVID-19 Pandemic, Plaintiff's business was one of the hardest hit subsets of the economy, with Plaintiff being exposed to extensive hardship with its food production business that was plagued by the COVID-19 virus.

12. In 2021, as the COVID-19 virus continued to disrupt Plaintiff's business, Plaintiff was approached by ERC Specialists, LLC ("ERC Specialists"), who held themselves out as a specialist in the government tax credit associated with the Employee Retention Tax Credit or Employee Retention Credit ("ERC" or the "Credit").

13. In holding itself out as a specialist in obtaining the Credit, ERC Specialists represented itself as being able to streamline the Credit process and provide Plaintiff with an expedited process to obtain the Credit, whereby ERC Specialists misrepresented itself as having special knowledge or skills outside of any ordinary tax preparer.

14. At all times relevant to this Complaint, ERC Specialist's advertisement, statements, and representations regarding their services were false and misleading, as ERC Specialists lacked any additional knowledge, skill, or ability to obtain the Credit than any other ordinary tax preparer, Certified Public Accountant, or a lay person.

15. The Credit is a refundable tax credit for businesses and tax-exempt organizations that had employees and were affected during the COVID-19 pandemic.

16. The Credit is available to eligible employers that paid qualified wages to some or all employees after March 12, 2020, and before January 1, 2022 during the Covid-19 Pandemic.

17. To claim the Credit, eligible businesses file a simple IRS Form 941x for eligible payroll tax quarters, which provides filers with the relevant credit in the form of a check from the United Stated Treasury.

18. Upon holding themselves as experts in the Credit, ERC Specialists provided Plaintiff a Tax Services Agreement ("Client Agreement").

19. Pursuant to the Client Agreement ERC Specialists charged a contingency fee of the entirety of the Credit issued by the IRS in an amount of fifteen percent (15%).

20. Pursuant to the Client Agreement the "Services" provided by ERC Specialists was that of legal advice as follows:

Services:

This agreement is for the scope of services that includes only tax work by ERC Specialists. This work may include navigating laws and rules affecting the client, filing, and financial forecasting. In the scope of our tax work we seek to identify the most favorable opportunities allowable under the IRC (Internal Revenue Code) to arrange personal, business, or estate affairs so as to minimize various taxes owed by the taxpayer.

21. Pursuant to the Client Agreement ERC Specialists represented itself as engaged in the practice of law by offering advice and guidance on "Tax Law":

Tax Law:

In providing tax services we always seek to remain safely in the realm of tax law. All advice we provide is to the best of our knowledge within the lawful scope allowable under the IRC. In the case of newly issued laws, and infrequently in the case of more established ones, the IRS may provide case rulings that interpret, clarify, restrict, or expand the written law. These rulings provide a precedence for safe processes. In the absence of such precedence, we follow the law as best it can be interpreted. We are always prepared to explain any tax law to any client or associate of such client. We never move forward with any execution until understanding and consent is satisfactorily achieved.

22. Pursuant to the Client Agreement, Plaintiff authorized ERC Specialists to serve as its legal power of attorney wherein the Law Office of Rocky D. Crofts, LLC ("Law Office") and Rocky Crofts, Esq. ("Crofts") were the designated legal counsel for Plaintiff via IRS Form 2848.

23. At all times relevant to this Complaint, ERC Specialists' employ and agency relationship with the Law Office and Crofts was so inextricably intertwined that ERC Specialists

was engaged in the practice of law and is liable for the actions and omissions of the Law office and/or Crofts through the doctrine of respondeat superior.

24. Crofts and the Law Office provided Plaintiff with his signed IRS Form 2848 for signature, knowing Plaintiff was a resident of Nevada, with Croft and the Law Office communicating with Plaintiff in Nevada, serving as Plaintiff's Power of Attorney, and filing documents on behalf of Plaintiff.

25. In providing Plaintiff with a signed IRS Form 2848, Crofts, acting in his individual capacity and upon information belief, as an agent of both the Law Office and ERC Specialists, provided his Utah Bar Number, represented himself as an attorney, and personally signed as the Designated Representative and Power of Attorney for Plaintiff.

26. Crofts at all times relevant herein was working in the course and scope of providing legal services through the Law Office and/or concurrently ERC Specialists.

27. Crofts, individually and upon information belief, through the Law Office was also retained counsel for ERC Specialists.

28. Crofts is listed as "general counsel" for ERC Specialists and upon information and belief, Crofts maintain an ownership interest or financial interest and/or financial benefit in the form of compensation from ERC Specialists.

29. ERC Specialists, the Law Office, and Crofts, in addition to misrepresenting their experience and services to induce Plaintiff to signing the Client Agreement also utilized a referral agent who further made misleading statements to Plaintiff regarding ERC Specialists, the Law Office, and Crofts ability to obtain an expedited Credit for Plaintiff.

30. At all times relevant herein, ERC Specialists, the Law Office, and Crofts directed the referral agent to misrepresent the scope of their services and obtain the business of Plaintiff by and including misrepresenting the fact that costs were not incurred in filing for the Credit, misrepresenting the timeline in which the Credit would be obtained, and misrepresenting the amount of work involved in obtaining the Credit.

/ / /

/ / /

31. ERC Specialists, the Law Office, and Crofts paid said referral agent between 15% -25% of the claimed total contingency fee from the Credit obtained by Plaintiff and other businesses who were considering utilizing ERC Specialists, the Law Office, and Crofts.

32. At no time did Crofts, individually, through the Law Office, or through ERC Specialists disclose to Plaintiff his affiliation and representation of ERC Specialists.

33. At no time did Crofts, individually, through the Law Office, or through ERC Specialists disclose to Plaintiff that they were paying the referral agent to misrepresent said services and that the referral agent was being compensated a percentage of the illegal and unconscionable contingency fee.

34. At no time did Crofts or any named Defendant provide Plaintiff a conflict waiver or explain the scope of representation outside of the Client Agreement.

35. At all times relevant herein, Crofts, individually, through the Law Office, and/or as an employee of ERC Specialists (and therefore ERC Specialists) had a conflict of interest in representing Plaintiff, based on ERC Specialists, Crofts, and the Law Office's interest in procuring highly lucrative contingent fee cases for legal representation that yielded unreasonable monetary payments in their favor.

36. The work provided by Crofts, individually, through the Law Office, and/or as an employee of ERC Specialists (and therefore ERC Specialists) was not difficult, required a low level of skill, did not preclude other employment, exceeded customarily charged fees, and required a minimal dedication of time.

37. In accepting the contingency fee for the Credit, Crofts, individually, through the Law Office, and/or as an employee of ERC Specialists (and therefore ERC Specialists) acted below the standard of care of an attorney by failing to advise or disclose to Plaintiff that accepting a contingent fee of the Credit was a violation of 31 U.S.C. § 10.27.

38. Crofts, individually, through the Law Office, and/or through ERC Specialists represented Plaintiff for a contingent legal fee, wherein ERC utilized Croft and/or the Law Firm's law license and Preparer Tax Identification Number to procure the above stated 15% contingent fee of the Credit.

39. In providing Plaintiff with IRS Form 2848, Plaintiff and Crofts (in his personal capacity and in his capacity as an agent for the Law Firm and ERC Specialists) agreed that Crofts "shall have the authority to sign any agreements, consents, or similar documents" on behalf of Plaintiff, inclusive of Plaintiffs 941x return.

40. In providing Plaintiff the signed IRS Form 2848, Crofts (in his personal capacity and in his capacity as an agent for the Law Firm and ERC Specialists) affirmatively stated they were the authorized representative of Plaintiff, affirming and representing an attorney-client relationship with Plaintiff.

41. In accepting the contingency fee for the Credit, Crofts, individually, through the Law Office, and/or as an employee of ERC Specialists (and therefore ERC Specialists) acted below the standard of care of an attorney by failing to advise or disclose to Plaintiff that the contingency fee charged for applying for the Credit was not in the best interest of Plaintiff and in fact Plaintiff could have obtained the same services for a pittance of the unreasonable and unconscionable contingency fee charged by Crofts, individually, through the Law Office, and/or as an employee of ERC Specialists.

42. In charging the contingency fee, Crofts, individually, through the Law Office, and/or as an employee of ERC Specialists exceeded reasonable and customary rates charged for similar services, thereby breaching their duty to place Plaintiff's interest above their own interests.

43. In failing to advise Plaintiff of his or its ownership interest or financial interest and/or relationship with ERC Specialists, Crofts, the Law Firm, and ERC Specialists were negligent in providing legal and tax advice to Plaintiff.

44. In failing to advise Plaintiff that contingency fees in instances of a percentage of a refund were in violation of regulations governing practice before the Internal Revenue Service, Crofts, the Law Firm, and ERC Specialists were negligent in providing legal and tax advice to Plaintiff.

45. In addition to the above stated negligence, acts, and omissions, ERC Specialists, Crofts, and/or the Law Firm engaged in a Deceptive Trade Practice under NRS 598.0923 by using an unconscionable practice in representing the scope of services offered by ERC Specialists under

the Client Agreement, wherein ERC Specialists utilized its knowledge of the newly disclosed CARES Act that authorized the ERC Credit for businesses through the filing of an IRS Form 941x and took advantage of Plaintiff's lack of knowledge, ability, and experience with the Cares Act and corresponding ERC Credit, by charging Plaintiff the unreasonable and illegal contingent fee by way of the Client Agreement.

46. In addition to the above stated negligence, acts, and omissions, ERC Specialists, Crofts, and/or the Law Firm engaged in a Deceptive Trade Practice under NRS 598.0915 by knowingly making a false representation in the Client Agreement, by falsely asserting and representing that ERC Specialists covered non-existent "costs associated with filing [for the Credit]."

47. ERC Specialists, Crofts, and/or the Law Firm at all times relevant to this Complaint knew no such "costs" are required to file the required IRS Form 941x and utilized the representation that costs would be incurred as a lure to induce Plaintiff into reviewing the compensation terms of the Client Agreement as reasonable, when they were in fact unreasonable and in violation of the law.

48. In holding itself out as a specialist in obtaining the Credit, ERC Specialists falsely represented itself as being able to streamline the Credit process and provide Plaintiff with an expedited process to obtain the Credit, whereby ERC Specialists misrepresented itself as having special knowledge or skills outside of any ordinary tax preparer and thereby violating the Deceptive Trade Practice under NRS 598.0915.

49. At all times relevant to this Complaint, ERC Specialists, Crofts, and/or the Law Firm knew of the conflict of interest with Plaintiff as described above and failed to withdraw or provide notice to Plaintiff of said conflict or provide Plaintiff reasonable legal guidance or candid legal representation within the ordinary standard of care for an attorney.

50. The reality of Plaintiff's retention of ERC Specialists, the Law Firm, and Croft was that Plaintiff's Credit was delayed, not advanced and ERC Specialists, the Law Firm, and Croft reaped or claim to have a contractual right to $169,311.96 from Plaintiff.

51. Had the above stated conflicts of interest, disclosures, and information been provide to Plaintiff, Plaintiff never would have retained the services of ERC Specialists, the Law Firm, and/or Crofts and would have utilized their retained CPA to handle the Credit for less than $3,000.00, in lieu of the unconscionable and unreasonable fee claimed by ERC Specialists of $169,311.96.

52. Upon Plaintiff receiving its Credit from the Department of Treasury, ERC Specialists made a demand for $169,311.96, which Plaintiff has refused to pay.

53. Upon information and belief, ERC Specialists, the Law Firm, and Crofts have shared in a collective sum of contingent fee cases from other clients who have been harmed by the same acts and omissions.

54. At all times relevant herein, for purposes of this Complaint, the Law Office and Crofts were acting in the course and scope of their employ, agency, or ownership (whether actual or equitable) in ERC Specialists and are therefore subject to the doctrines of respondent superior.

**FIRST CLAIM FOR RELIEF**
**(Legal Malpractice/ Professional Negligence)**
**(All Defendants)**

55. Plaintiff repeats, realleges, and incorporates each of the above stated paragraphs herein.

56. ERC Specialists, the Law Office, and Croft at all times relevant herein under the Client Agreement and Power of Attorney were engaged in the practice of law.

57. At all times relevant to this Complaint, an attorney-client relationship existed between Plaintiff, ERC Specialists, the Law Office, and Croft.

58. Pursuant to the Client Agreement ERC Specialists charged a contingency fee of the entirety of the Credit issued by the IRS in an amount of fifteen percent (15%), in which the Law Office and/or Croft shared in such contingency fee.

59. The Law Firm and Crofts served as the exclusive Power of Attorney for all of ERC Specialists' IRS Form 2848 executed by its customers, including Plaintiff.

60. At all times relevant to this Complaint, ERC Specialists' employ and agency relationship with the Law Office and Crofts was so inextricably intertwined that ERC Specialists

was engaged in the practice of law and is liable for the actions and omissions of the Law office and/or Crofts through the doctrine of respondeat superior.

61. Pursuant to the Client Agreement the "Services" provided by ERC Specialists was that of legal and tax advice as follows:

> Services:
>
> This agreement is for the scope of services that includes only tax work by ERC Specialists. This work may *include navigating laws* and rules affecting the client, filing, and financial forecasting. In the scope of our tax work we seek to identify the most favorable opportunities allowable under the IRC (Internal Revenue Code) to arrange personal, business, or estate affairs so as to minimize various taxes owed by the taxpayer.

62. Pursuant to the Client Agreement ERC Specialists represented itself as engaged in the practice of law by offering advice and guidance on "Tax Law":

> **Tax Law**:
>
> In providing tax services we always seek to remain safely in the *realm of tax law*. All *advice* we provide is to the best of our knowledge within the lawful scope allowable under the IRC. In the case of newly issued laws, and infrequently in the case of more established ones, the IRS may provide case rulings that interpret, clarify, restrict, or expand the written law. These rulings provide a precedence for safe processes. In the absence of such precedence, *we follow the law as best it can be interpreted. We are always prepared to explain any tax law to any client or associate of such client*. We never move forward with any execution until understanding and consent is satisfactorily achieved.

63. Pursuant to the Client Agreement, Plaintiff authorized ERC Specialists to serve as its legal power of attorney wherein the Law Office and Crofts were the designated legal counsel for Plaintiff via IRS Form 2848.

64. At all times relevant to this Complaint, Plaintiff believed the Law Office and Crofts were acting in his best interest as his counsel of record.

65. Crofts provided Plaintiff with his signed IRS Form 2848 for signature, knowing Plaintiff was a resident of Nevada.

66. In providing Plaintiff with a signed IRS Form 2848, Crofts, acting in his individual capacity and upon information belief, as an agent of both the Law Office and ERC Specialists, provided his Utah Bar Number, represented himself as an attorney, and personally signed as the Designated Representative and Power of Attorney for Plaintiff.

67. Upon information and belief, Crofts at all times relevant herein was working in the course and scope of providing legal services through the Law Office and/or concurrently ERC Specialists.

68. Crofts, individually and upon information belief, through the Law Office was also retained counsel for ERC Specialists.

69. Crofts is listed as "general counsel" for ERC Specialists and upon information and belief, Crofts maintain an ownership interest or financial interest and/or financial benefit in the form of compensation from ERC Specialists.

70. At no time did Crofts, individually, through the Law Office, or through ERC Specialists disclose to Plaintiff his affiliation and representation of ERC Specialists.

71. At no time did Crofts or any named Defendant provide Plaintiff a conflict waiver or explain the scope of representation outside of the Agreement

72. At all times relevant herein, Crofts, individually, through the Law Office, and/or as an employee of ERC Specialists (and therefore ERC Specialists) had a conflict of interest in representing Plaintiff, based on ERC Specialists, Crofts, and the Law Office's interest in procuring highly lucrative contingent fee cases for legal representation that yielded unreasonable monetary payments in their favor.

73. The work provided by Crofts, individually, through the Law Office, and/or as an employee of ERC Specialists (and therefore ERC Specialists) was not difficult, required a low level of skill, did not preclude other employment, exceeded customarily charged fees, and required a minimal dedication of time.

74. In accepting the contingency fee for the Credit, Crofts, individually, through the Law Office, and/or as an employee of ERC Specialists (and therefore ERC Specialists) acted below the standard of care of an attorney by failing to advise or disclose to Plaintiff that accepting a contingent fee of the Credit was a violation of 31 U.S.C. § 10.27.

75. Crofts, individually, through the Law Office, and/or through ERC Specialists represented Plaintiff for a contingent legal fee, wherein ERC utilized Croft and/or the Law Firm's

law license and Preparer Tax Identification Number to procure the above stated 15% contingent fee of the Credit.

76. In providing Plaintiff with IRS Form 2848, Plaintiff and Crofts (in his personal capacity and in his capacity as an agent for the Law Firm and ERC Specialists) agreed that Crofts "shall have the authority to sign any agreements, consents, or similar documents" on behalf of Plaintiff, inclusive of Plaintiffs 941x return.

77. In providing Plaintiff the signed IRS Form 2848, Crofts (in his personal capacity and in his capacity as an agent for the Law Firm and ERC Specialists) affirmatively stated they were the authorized representative of Plaintiff, affirming and representing an attorney-client relationship with Plaintiff.

78. In accepting the contingency fee for the Credit, Crofts, individually, through the Law Office, and/or as an employee of ERC Specialists (and therefore ERC Specialists) acted below the standard of care of an attorney by failing to advise or disclose to Plaintiff that the contingency fee charged for applying for the Credit was not in the best interest of Plaintiff and, in fact, Plaintiff could have obtained the same services for a pittance of the unreasonable and unconscionable contingency fee charged by Crofts, individually, through the Law Office, and/or as an employee of ERC Specialists.

79. In charging the contingency fee, Crofts, individually, through the Law Office, and/or as an employee of ERC Specialists exceeded reasonable and customary rates charged for similar services, thereby breaching their duty to place Plaintiff's interest above their own interests.

80. In failing to advise Plaintiff of his or its ownership interest or financial interest and/or relationship with ERC Specialists, Crofts, the Law Firm, and ERC Specialists were negligent in providing legal and tax advice to Plaintiff.

81. In failing to advise Plaintiff that contingency fees in instances of a percentage of a refund were in violation of regulations governing practice before the Internal Revenue Service, Crofts, the Law Firm, and ERC Specialists were negligent in providing legal and tax advice to Plaintiff.

82. By virtue of the conduct described in the preceding paragraphs, Defendants breached their duty of care to Plaintiff and therefore committed professional malpractice.

83. But for Defendants' legal malpractice, Plaintiff would not have agreed to the terms of the Client Agreement and therefore the unreasonable and punitive fees charged therein.

84. As a result of Defendants' breach, Plaintiff has suffered damages in an amount to be determined at trial, but under no circumstances less than $169,311.96.

85. As a result of Defendants' breach, Plaintiff has been forced to retain the services of an attorney and is entitled to recover such attorney fees, interest, and costs as set forth under the Agreement.

## SECOND CLAIM FOR RELIEF
### (Violation of Nevada Deceptive Trade Practices—NRS 598 et seq.)

86. Plaintiff repeats, realleges, and incorporates each of the above stated paragraphs herein.

87. ERC Specialists, Crofts, and/or the Law Firm engaged in a Deceptive Trade Practice under NRS 598.0923(b)-(c) by using an unconscionable practice in representing the scope of services offered by ERC Specialists under the Client Agreement, wherein ERC Specialists utilized its knowledge of the newly disclosed CARES Act that authorized the Credit for businesses through the filing of an IRS Form 941x and took advantage of Plaintiff's lack of knowledge, ability, and experience with the Cares Act and corresponding Credit, by charging Plaintiff the unreasonable and illegal contingent fee by way of the Client Agreement.

88. ERC Specialists, Crofts, and/or the Law Firm violated 31 U.S.C. § 10.27 by accepting the unreasonable contingent fee from Plaintiff.

89. ERC Specialists, Crofts, and/or the Law Firm further engaged in a Deceptive Trade Practice under NRS 598.0915 by knowingly making a false representation in the Client Agreement, by falsely asserting and representing that ERC Specialists covered non-existent "costs associated with filing [for the Credit]."

90. ERC Specialists, Crofts, and/or the Law Firm at all times relevant to this Complaint knew no such "costs" are required to file the required IRS Form 941x and/or grossly inflated the

existence of any "costs", and utilized the representation that costs would be incurred in obtaining the Credit, as a lure to induce Plaintiff to approve and review the compensation terms of the Client Agreement as reasonable, when they were in fact unreasonable and in violation of the law.

91. Had Plaintiff not been provided false and misleading information in the Client Agreement and be led to believe extensive costs and time would be dedicated to handling the Credit, Plaintiff would have utilized a CPA who could have filed out the IRS Form 941x and provided superior service (without the above stated conflict of interest and self-dealing) to Plaintiff for less than $5,000.00.

92. In holding itself out as a specialist in obtaining the Credit, ERC Specialists falsely represented itself as being able to streamline the Credit process and provide Plaintiff with an expedited process to obtain the Credit, whereby ERC Specialists misrepresented itself as having special knowledge or skills outside of any ordinary tax preparer and thereby violating the Deceptive Trade Practice under NRS 598.0915.

93. In or around November 2021, ERC Specialists, Crofts, and/or the Law Firm continued misrepresenting the services offered, wherein they advertised and represented to Plaintiff that the ERC refund would be processed within sixteen weeks and would handle the process from start to finish, guarantees and representations in which Plaintiff relied on in assessing the contingency fee requested by ERC Specialists.

94. ERC Specialists, Crofts, and/or the Law Firm's representation of sixteen weeks for the Credit was knowingly false and misleading, as they never had any facts to guarantee, let alone assure Plaintiff that the sixteen-week timeline could be met.

95. Defendants further misrepresented that they would handle the ERC process from start to finish, as Plaintiff was instructed and required by Defendants to contact the IRS themselves to check for status updates on the Credit.

96. The reality was Plaintiff's Credit was not subject to any "white-glove" service or fast tracking with the IRS and Plaintiff's Credit was not expedited or subject to quicker processing, nor service through "every step of the way."

97. Defendants, in making the above stated deceptive statements, intentionally did so to lure Plaintiff to utilize their services for their financial benefit, knowing such representations would have a detrimental financial effect on Plaintiff.

98. As a result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial, but under no circumstances less than $169,311.96.

99. As a result of Defendants' actions, Plaintiff has been forced to retain the services of an attorney and is entitled to recover such attorney fees, interest, and costs as allowed by statute.

100. As a result of Defendants' oppressive and malicious deception as more fully stated in the preceding paragraphs, Plaintiff is entitled to punitive damages in an amount to be determined by the trier of fact.

### THIRD CLAIM FOR RELIEF
**(Breach of Fiduciary Duty)**
**(All Defendants)**

101. Plaintiff repeats, realleges, and incorporates each of the above stated paragraphs herein, including but not limited to Paragraphs 49-70 and 76-90.

102. ERC Specialists, the Law Office, and Croft at all times relevant herein under the Client Agreement and Power of Attorney were engaged in the practice of law and rendition of accounting services.

103. ERC Specialists, the Law Office, and Croft in engaging in the practice of law were prohibited from charging an unreasonable fee and were required to disclose each of the above stated conflicts of interest set forth in the preceding paragraphs, including Croft and the Law Firm's association and financial interest with ERC Specialists and the true nature of the work involved with claiming the Credit (or lack thereof).

104. At all times relevant to this Complaint, an attorney-client relationship and accountant-client relationship existed between Plaintiff, ERC Specialists, the Law Office, and Croft.

105. Fiduciary duties owed by Defendants to Plaintiff arose by virtue of their attorney-client relationship.

106. By virtue of the foregoing conduct described in the preceding paragraphs, Defendants breached their fiduciary duties to Plaintiff, committing legal malpractice.

107. Defendants' breaches of their fiduciary duties actually and proximately caused Plaintiff to suffer actual injury, including but not limited to the impairment and loss of property in the form of 15% of the Credit.

108. As a result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial, but under no circumstances less than $169,311.96.

109. As a result of Defendants' actions, Plaintiff has been forced to retain the services of an attorney and is entitled to recover such attorney fees, interest, and costs as set forth under the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendants:

1. For compensatory damages;
2. For recission of contract;
3. For punitive damages;
4. For pre and post judgment interest;
5. For attorney fees as special damages;
6. For declaratory judgment as stated;
7. For an award of costs; and
8. For any further relief as the Court deems to be just and proper.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all factual matters in this Complaint.

Dated this 29th day of September 2023.

**BECKSTROM & BECKSTROM, LLP**


By: /s/ *James A. Beckstrom*
James A. Beckstrom, Esq.
Nevada Bar No. 14032
400 South 4th Street, Suite 650
Las Vegas, Nevada 89101
*Attorneys for Plaintiff*